FILED _____ LODGED
RECEIVED _____ COPY

JAN 29 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  CARL A. WESCOTT
2  8210 E. VIA DE LA ESCUELA
   SCOTTSDALE AZ 85258
3  *IN PROPRIA PERSONA*
   +1 276 773 7377

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| CARL A. WESCOTT,<br><br>            Plaintiff,<br><br>vs.<br><br>MR. EZRA DOE;<br>MS. MICHELE DOE;<br>FRY'S FOOD STORES OF<br>ARIZONA, INC.<br><br>            Defendants.<br><br>  + DOES 1 through 10 | Civil Action No.  **CV24-00198-PHX-DJH**<br><br>**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II of the CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; and INJUNCTIVE RELIEF** |

Plaintiff Carl A. Wescott, proceeding *pro se,* complains of Defendant Fry's Food Stores of Arizona, Inc., Mr. Ezra DOE, and Ms. Michele DOE. In support of his Complaint, the Plaintiff states as follows:

## THE PARTIES: PLAINTIFF AND DEFENDANTS

1. The Plaintiff is an individual presently residing in Scottsdale, Arizona.

2. Fry's Food Stores of Arizona, Inc. ("Fry's") is a grocery chain operating about 125 grocery

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1983 (RIGHT TO DUE PROCESS); VIOLATIONS OF 42 USC § 1985 (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; & INJUNCTIVE RELIEF**

stores under the Fry's Food and Fry's Marketplace banners, mostly in Phoenix but also in Tucson and Prescott, Arizona. In addition to tradition groceries and supermarket fare, many Fry's stores have in-store pharmacies, in-store banking, in-store Starbucks for coffee consumption, and in-store restaurants where one can buy pre-made and pre-packaged food for consumption on the premises. Fry's is one of twenty-five (25) grocery retail chains owned by the Kroger Co., the #1 pure grocery chain in the United States of America.

3. Mr. Ezra DOE is a Fry's employee. The Plaintiff does not know his last name. Mr. Ezra DOE works in the Fry's Signature store at 10450 N 90th Street, in the area of the self-check out kiosks near the main entrance of The Store.

4. Ms. Michele DOE is a Fry's employee, who is the Front End Manager of that same signature Fry's. The Plaintiff does not know her last name. She refused to provide her full name when asked.

## ALLEGATIONS REGARDING CONSPIRARY

5. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Ezra DOE and Ms. Michele DOE, as individuals, in addition to acting for himself and herself and on his or her own behalf individually, as well as for the benefit of his or her marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

2

6. In addition, upon information and belief, there are many more individual defendants. Those additional Defendants shall emerge with the benefit of legal discovery.

7. Plaintiff further alleges on information and belief that the acts of each of the individual Defendants were fully ratified by each and all the other Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

8. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Fry's, in addition to acting for itself and on its own behalf, is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

9. In addition, upon information and belief, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, that shall emerge with the benefit of legal discovery.

10. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such additional corporate entities, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge,

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

11. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the Defendants.

12. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of te specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## JURISDICTION AND VENUE

13. This is an action for damages pursuant to 42 U.S.C. § 1985 based upon the violations of the Plaintiff's class-based civil rights.

14. A second federal question of law exists under Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a), for which the Plaintiff seeks injunctive relief.

15. Jurisdiction in the United States District Court exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1985, 42 U.S.C. § 2000a, and questions of federal constitutional law.

16. This particular Court has jurisdiction over these federal law issues due to these Defendants' violations of federal law in this district, specifically the civil rights issues outlined within the auspices of the Civil Rights Act of 1964 (42 U.S.C. § 2000a), as well as 42 U.S.C. § 1985.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

17. Supplemental jurisdiction over the Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367(a) and the facts that the individual defendants work in this district, the entity defendant is domiciled herein, and the tortious acts, non-acts, and negligence complained of herein occurred in this district, too.

## UNDERLYING FACTS AND BACKGROUND CONTEXT

18. The Plaintiff is an individual presently residing in Scottsdale, Arizona.

19. In 2022, the Plaintiff came to Fry's Signature store at 10450 N 90th Street in Scottsdale, Arizona ("The Store") regularly in the mornings to buy food and the New York Times.

20. The Plaintiff has been on food stamps/EBT/SNAP for much of the last few years.

21. The Plaintiff is a US Citizen, whose mother is Finnish and who grew up in Europe as a child and attended schools in countries that were former British colonies, among other cultural and linguistic influences.

22. The Plaintiff has a slight lilt and sounds more European than American.

23. The Plaintiff would buy food with food stamps ("EBT"), and the New York Times with cash or on the Plaintiff's debit card.

24. The Plaintiff is a man who in 2022 regularly had burgundy, red, or pink nail polish on his nails.

25. The Plaintiff is not gay, but many people assume he is gay.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
5

**The First Incident of Discimination (by Mr. Ezra DOE)**

26. On a day in late 2022 (the Plaintiff does not know the exact date), the Plaintiff had bought his food at Fry's using EBT but hadn't yet purchased the New York Times.

27. The Plaintiff and his shopping cart were at the self-checkout kiosks with his food items and the New York Times, both of which he was purchasing.

28. If the Plaintiff recalls correctly, on that day, he had purchased pre-made pot stickers, pre-made sushi, and celery juice, among other food items.

29. Those food items, other juices, and Red Bulls were the Plaintiff's habitual Fry's purchases.

30. Because EBT and food stamps will only pay for food and not the New York Times, the Plaintiff habitually separated his purchases at Fry's into two purchases:  (1) food with EBT (2) the New York Times using cash or a Debit card.

31. On the date in question, after the Plaintiff was done with his food purchases but before the Plaintiff had made his second purchase of the New York Times, Mr. Ezra DOE came and grabbed the Plaintiff's New York Times from the Plaintiff.

32. Mr. Ezra DOE works at Fry's in the area by the self-check-out machines, helping customers but also making sure customers pay for all their items.

33. Mr. Ezra DOE ran up the aisle and caused a scene (gesticulating wildly with his arms while leaping up and down).

34. Mr. Ezra DOE then threw the Plaintiff's paper on the ground, stomping on the paper or near it and jumping up and down.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

6

35. The Plaintiff shall refer to these boorish and churlish acts as "The First Incident of Discrimination".

36. The Plaintiff's assumption at the time was that one of the reasons for the boorish and churlish behavior and the havoc caused by Mr. Ezra DOE was that Mr. Ezra DOE discriminated against the Plaintiff because he was using food stamps.

37. Mr. Ezra DOE wished to humiliate and embarrass the Plaintiff.

38. The Plaintiff could certainly understand if a retail store owner or their employee did not want poor people at their stores if they didn't buy anything, if they loitered, and if they stole.

39. But the Plaintiff did not steal anything and is a very good customer – or was a very good customer – of Fry's. The last time the Plaintiff went shopping at Fry's he spent around $90!

40. It is illegal under federal law for Mr. Ezra DOE to discriminate against the Plaintiff due to his class (being mired in abject poverty).

41. The Plaintiff had talked to Mr. Ezra DOE before, asking him for a Fry's VIP card, for example.

42. Thus, Mr. Ezra DOE not only knew that the Plaintiff was poor, but also knew that the Plaintiff is linguistically European.

43. The Plaintiff's second assumption at the time was that Mr. Ezra DOE also discriminated against him because the Plaintiff is a foreigner, due to his European accent.

44. From the Plaintiff's perspective, Mr. Ezra DOE's behavior was uncivilized and entirely inappropriate!

45. The Plaintiff did feel unwelcome at The Store and stopped coming to that Fry's store regularly.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

46. The Plaintiff didn't even think of the third reason that Mr. Ezra DOE likely discriminated against him during the First Incident of Discrimination until more recently, right after the Second Incident of Discrimination.

47. The Plaintiff's fingernails were painted that day, as they were regularly every day in 2022.

48. Mr. Ezra DOE also discriminated against the Plaintiff due to Mr. Ezra DOE being homophobic and despising gay people!

49. Workplace discrimination against the Plaintiff for being gay (or perceived as gay) would be illegal.

50. The Plaintiff is outraged and indignant for being discriminated against for being poor and European.

51. Even though it is not illegal in Arizona for Mr. Ezra DOE to discriminate against the Plaintiff in a retail store or a public accommodation for being gay, the Plaintiff believes that that is wrong, too.

52. The Plaintiff doubts that it is Fry's Signature official store policy to discriminate against people based on their class or national origin – nor their sex, race, age, religion, or sexual preference – though that certainly appears to be the case with this Fry's employee and his training!

53. Clearly, this Fry's employee wished to humiliate and embarrass the Plaintiff.

54. The Plaintiff has come back a few times to that Fry's when in the area, but in general, the Plaintiff now avoids The Store where he was the subject of discrimination.

55. The Plaintiff feels unwelcome in The Store and would also feel unwelcome in other Fry's stores.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

8

**The Second Incident of Discimination (by Mr. Ezra DOE and Ms. Michele DOE)**

56. Upon information and belief, Mr. Ezra DOE or a party related to Mr. Ezra DOE may have filed a false police report, at least orally, about the Plaintiff. This shall be determined in discovery.

57. The Plaintiff returned to Fry's on or around January 9th, 2024, to shop for lunch.

58. As explained earlier, the Plaintiff now generally avoids The Store – but on this day he happened to be near The Store, at the Scottsdale Library across the street.

59. The Plaintiff has often patronized Starbucks in Fry's and other Kroger-owned grocery chains, buying coffee, tea or matcha along with pastries, donuts, and other bakery items. The Plaintiff then has a meal on-premises, consuming those purchased items, sometimes while reading the New York Times.

60. The Plaintiff walked by Mr. Ezra DOE and walked to the pre-made sushi lunch counter. Right after he walked by Mr. Ezra DOE, Mr. Ezra DOE made a phone call. The Plaintiff only grasped the significance later (Mr. Ezra DOE likely called Ms. Michele DOE, because Mr. Ezra DOE does not want poor Europeans at his store).

61. The Plaintiff was standing at the on-site pre-made-sushi counter and picking out sushi to eat for lunch, when he was approached by Ms. Michele DOE.

62. Right by where the Plaintiff was standing is the on-site Starbucks, which people can bring their lunch items too, buying coffee from Starbucks.

63. Ms. DOE explained that she was the Front End Manager of that Fry's store, and that the Plaintiff had been "trespassed."

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

64. The Plaintiff did not understand what that meant, and asked Ms. DOE several times what "trespassed" meant.

65. It turns out that "trespassed" is Fry's vernacular meaning that a customer is no longer welcome on the premises, and that management will inform the customer he is trespassing and kick him out of The Store.

66. Ms. Michele DOE explained that if the Plaintiff did not leave, that he would be arrested.

67. Ms. Michele DOE further explained that if the Plaintiff returned to shop at Fry's, that he would be arrested.

68. The Plaintiff was indignant and outraged, especially considering his prior treatment in the First Incident of Discrimination by Mr. Ezra DOE.

69. The Plaintiff asked why he was being "trespassed" several times, what he had done wrong, but Ms. DOE had no explanation.

70. The Plaintiff was and is a good customer, unlike some who are financially challenged.

71. To wit, the Plaintiff was loading up with food items at the pre-sushi counter, one of the highest-margin parts of Fry's retail store.

72. The Plaintiff had put about 40 dollars of high-margin pre-made food products in his shopping basket within a minute of entering The Store.

73. The Plaintiff had some pre-made sushi products in hand that he had picked up from the lunch counter and was about to add another 16 dollars or so to his basket within seconds.

74. Ms. Michele DOE could not offer any reason that she did not want the Plaintiff at her store.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
10

75. Given that Mr. Ezra DOE called Ms. Michele DOE to kick the Plaintiff out of the Store, Ms. Michele DOE likely shares Mr. Ezra DOE's biases, including against the poor and against foreigners.

76. Ms. DOE finally offered up that a police report had been filed against the Plaintiff, and that if the Plaintiff did not leave immediately, she would call the police, who would immediately arrest the Plaintiff.

77. The Plaintiff asked what the police report stated and what crime he had allegedly committed, but Ms. Michele could not answer the question.

78. Ms. Michele stated that she was unaware of anything that the Plaintiff had done wrong, and unaware of any crime the Plaintiff had committed.

79. Ms. Michele either did not know the subject of the alleged police report, or more likely, she simply lied to the Plaintiff.

80. The Plaintiff, knowing full well that he had not broken any laws, and that he always paid for all his items at Frys, knew that there could not be a truthful police report filed about the Plaintiff allegedly committing a crime at Fry's.

81. The Plaintiff asked Ms. Michele DOE several times what he had done, and what the police report stated, but Ms. Michele DOE had no answer for him.

82. Ms. Michele DOE did not know, or could not express, anything that the Plaintiff was doing wrong or had done wrong.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
11

83. The Plaintiff asked Mr. Michele DOE for a copy of the police report, and she promised to get it to him.

84. The Plaintiff gave his contact information to Ms. Michele and left The Store.

85. As the Plaintiff left The Store, he noticed that Ms. Michele went back to talk to Mr. Ezra DOE, the person who had called Ms. Michele when the Plaintiff entered The Store, to kick the Plaintiff out.

86. That is when it dawned upon the Plaintiff, what was likely happening and why Mr. Ezra DOE and Ms. Michele DOE could not come up with a valid reason to kick him out of The Store.

87. Mr. Ezra DOE had called Ms. Michele DOE when the Plaintiff entered The Store. The two of them had communicated in the past about the Plaintiff, their poor, foreign customer.

88. Mr. Ezra DOE and Ms. Michele DOE were both discriminating against the Plaintiff for being a foreigner and a lower-class citizen (in their minds, given that the Plaintiff shops with food stamps).

89. But neither could say to the Plaintiff, "We don't want your kind around here."

90. Mr. Ezra DOE and Ms. Michele DOE had acted as judge, jury, and executioner of the Plaintiff's rights to freely shop at Fry's, for the crimes of being poor and foreign.

91. The Plaintiff doubts that most Fry's customers – especially those who are not of foreign national origin and poor – get this treatment. That will be determined when the Plaintiff serves discovery.

92. It will be a question of fact whether Ms. Michele DOE was also discriminating against the Plaintiff because of his sex. That is also a possibility, as is the possibility of reverse discrimination because the Plaintiff is Caucasian.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
12

**Apparently, there is no Police Report (or Fry's knows it is false)**

93. The Plaintiff decided to keep an open mind.

94. Perhaps there was a false police report filed against the Plaintiff, which in itself would be a crime in Arizona:

> **ARS 13-2907.01.** False reporting to law enforcement agencies
>
> A. It is unlawful for a person to knowingly make to a law enforcement agency of either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

95. The Plaintiff expected Ms. Michele DOE to send him the police report as she had promised.

96. The Plaintiff has now provided his contact information to Ms. Michele DOE four (4) times.

97. The Plaintiff wrote Ms. Michele DOE a letter on January 9th, 2024, both to complain about The First Incident of Discrimination and to ensure that Ms. Michele DOE followed up with the promised police report.

98. The Plaintiff did not receive the alleged police report by email or by mail.

99. The Plaintiff wrote to Ms. Michele DOE against on January 15th, 2024.

100. The Plaintiff did not receive the alleged police report by email or by mail.

101. Finally, on January 22nd, 2024, the Plaintiff printed out his previous letter and went to the Fry's store to get the police report that Ms. Michele DOE had alleged exists.

102. The Plaintiff checked in with Mr. Ezra DOE at around 1:50 pm.

103. The Plaintiff explained the situation, and Mr. Ezra asked him to wait and said that Ms. Michele DOE would be there "in a minute."

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

13

104.  After the Plaintiff had waited 10 or 15 minutes, he checked in with Mr. Ezra DOE again.

**The Third Incident of Discrimination (by Mr. Ezra DOE and Ms. Michele DOE)**

105.  Mr. Ezra DOE then informed the Plaintiff that rather than meeting with the Plaintiff as promised, Ms. Michele DOE had decided to take a long lunch and leave The Store, and she would not be back until after 3 pm, 75+ minutes after the Plaintiff had first arrived.

106.  Mr. Ezra DOE did not have to check with anyone to know that Ms. Michele DOE had left rather than meeting with the Plaintiff "in a minute", about 15 minutes prior. Mr. Ezra DOE knew that Ms. Michele DOE had left the store for lunch, and had informed Mr. Ezra DOE that she was leaving rather than keeping her promise and Mr. Ezra DOE's promise to meet with the Plaintiff "in a minute."

107.  In Mr. Ezra DOE's mind, though, as a second-class citizen, the Plaintiff was unworthy of that information. Promises to the Plaintiff should be broken. The Plaintiff is (in Mr. Ezra DOE's and in Ms. Michele's minds) not worthy of common courtesies.

108.  Ms. Michele DOE, having been exposed with her biases and lies about the police report, did not want to face the Plaintiff.

109.  Mr. Ezra DOE did not inform the Plaintiff that Ms. Michele DOE had left, as Mr. Ezra DOE wanted to waste more of the Plaintiff's time, to frustrate him, after the past acts to cause him anguish and embarrassment, and those to kick him out of the Fry's Store without any legitimate reason to do so.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
14

110. No-one could produce the alleged police report despite multiple Fry's visits and followups.

111. Clearly, there is no police report (upon information and belief).

112. As of today, January 27th, 2024, the Plaintiff has not received the alleged police report by email or by mail, despite all the promises to provide it, many followups, and seventeen (17) further days.

113. If there was actually a police report, Ms. Michele would have produced it, and would not be embarrassed to meet with the Plaintiff and have to leave the premises and her job entirely to avoid speaking to the Plaintiff.

114. Alternatively, if there is a police report, Mr. Ezra DOE and Ms. Michele DOE know that it is a false police report.

115. The Plaintiff always pays for all the food he purchases. Any police report is almost certainly false (hard to say for sure until the Plaintiff sees what the false allegations are).

116. If there is a false police report, the Plaintiff would like a copy, so that he can file his own police report for the false reporting of a crime.

117. If there is no police report and Ms. Michele DOE simply lied about that, the Plaintiff alleges that that is *prima facie* evidence of Mr. Ezra DOE's and Ms. Michele DOE's discrimination.

118. Upon information and belief, the lies by Mr. Ezra DOE and Ms. Michele DOE were simply to cover up their biases against the poor, against foreigners, and possibly Ms. Michele's bias against the Plaintiff as a male.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
15

119.  Perhaps the two of them are homophobic, too, but if the two of them and other Frys employees are discriminating against the Plaintiff, thinking that he is gay, that is apparently not illegal.

120.  (The Plaintiff believes that the Equality Act (HR 5 – 117th Congress (2021-2022) – or something like it - should be passed to remedy this situation across the United States)

**Negligent Hiring, Supervision, and Retention**

121.  Arizona follows the *Restatement (Second) of Agency §213* as a general rule for deciding cases of negligent hiring and supervision.

122.  The Plaintiff does not currently know if background checks on Mr. Ezra DOE or Ms. Michele DOE, better referencing, or better interviewing would have enabled the Frys hiring managers not to hire employees with such strong and illegal biases, who discriminate against customers.

123.  Perhaps better training at Fry's would have prevented this unfortunate situation.

124.  The Plaintiff does, however, allege negligent supervision being part of the atmosphere that has allowed these tortious acts to occur.

125.  The Plaintiff doubts that Frys' policies and procedures were in place or followed.

126.  The Plaintiff doubts that Fry's as a store or a company, nor Kroger, its parent company, make it a policy to discriminate on the basis of sex, class, religion, age, or national origin.

127.  Within the workplace, the Plaintiff doubts that Fry's policy is to discriminate against those who are gay.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
16

128. But yet, multiple Fry's employees conspired to discriminate against the Plaintiff and deprive him of his rights.

129. The *Second Restatement of Agency §213* states that an employer conducting an activity through employees or agents of the employer is subject to liability for harm to a third party if the employer is negligent or reckless in: 1. Giving improper or ambiguous orders or in failing to make proper regulations of employees; 2. The employment of improper persons for work involving risk or harm to others; 3. The supervision of the employee's activities; or, 4. Permitting or failing to prevent negligent or other tortious conduct by persons, whether or not the employees upon the premises are under the employer's control.

130. To be independently liable for negligence in retention or supervision, the employer must have known or had reason to know that there was an undue risk of harm to a third person by the employee prior to any harm occurring.

131. The Plaintiff alleges that Fry's knew, or should have known, about the issues in Mr. Ezra's background and from any past incidents of discrimination.

132. The Plaintiff alleges that Fry's knew, or should have known, about the issues in Ms. Michele's background and from any past incidents of discrimination.

133. The Plaintiff further alleges that Mr. Ezra DOE and Ms. Michele DOE still being employed at the Fry's Food store is *prima facie* evidence of negligence in retention.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
17

134.    Fry's is civilly responsible and liable for the tortious acts and non-acts committed by Mr. Ezra DOE, Ms. Michele DOE, and its other employees, as well as their negligence, in the course and scope of their employment, both under vicarious liability and *respondeat superior*.

**The United States of America – a country founded upon freedom and equality**

135.    The United States of America was founded upon ideals including democracy, freedom, equality, liberty, and the pursuit of happiness.

136.    The Plaintiff is still a believer in the ideals espoused in the founding of the United States of America, as well as those embodied in the Constitution, the Bill of Rights, the Fourteenth Amendment, and in many civil rights laws passed since then, including the Civil Rights Acts of 1871 and the Civil Rights Act of 1964.

137.    After suffering indignities at the hands of Frys employees, the Plaintiff now seeks redress in the Courts.

138.    The Plaintiff attempted dialogue and multiple followups to get Ms. Michele DOE to provide him with information about what he had supposedly done wrong as well as to obtain the alleged police report.

139.    The Plaintiff no longer believes that such a police report exists.

140.    Given that Ms. Michele DOE refused to even talk to him or meet with him, the Plaintiff is even more confident that Mr. Ezra DOE and Ms. Michele DOE are biased and have discriminated against him.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
18

141.    Hence, the Plaintiff's filing of this legal complaint. The Plaintiff is suing in part to vindicate the rights of orderly, law-abiding retail food customers like himself, including those who are poor and of foreign origin.

142.    The Plaintiff wishes to protect the rights of all who suffer discrimination because of their race, class, sex, religion, national origin or perceived sexual identity.

**Jury Trial Requested**

143.    Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

144.    The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

---

**Planned Injunctive Relief**

145.        The Plaintiff believes that his civil rights have been violated under Title II of the Civil Rights Act of 1964 (Public Accommodations), also codified at 42 U.S.C. § 2000a, originally passed as Public Law 88-352 (78 Stat. 241).

146.        The Plaintiff believes that The First Incident of Discrimination occurred because

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
19

1   Mr. Ezra DOE dislikes poor people; Mr. Ezra DOE dislikes Europeans; and Mr. Ezra DOE is

2   homophobic and dislikes gay people.

3   147.   The Plaintiff's civil rights have been violated under the same statute, Title II of the

4   Civil Rights Act of 1964 (Public Accommodations), also codified at 42 U.S.C. § 2000a.

5

6   148.   The First Incident of Discrimination occurred because Mr. Ezra DOE dislikes poor

7   people; Mr. Ezra DOE dislikes Europeans; and Mr. Ezra DOE is homophobic and dislikes gay

8   people.

9   149.   The Second Incident of Discrimination occurred because Mr. Ezra DOE and Ms.

10  Michele DOE are biased against poor people and because Mr. Ezra DOE and Ms. Michele DOE

11  are biased against foreigners.

12  150.   The Third Incident of Discrimination occurred because Mr. Ezra DOE and Ms.

13  Michele DOE are biased against poor people and because Mr. Ezra DOE and Ms. Michele DOE

14  are biased against foreigners.

15

16  151.   It is illegal for the two individual Defendants to discriminate against the Plaintiff in

17  public accommodations based on the Plaintiff's being poor.

18  152.   It is illegal for the two individual Defendants to discriminate against the Plaintiff in

19  public accommodations based on the Plaintiff's national origin.

20  153.   As per the Civil Rights act of 1964, "all persons shall be entitled to a full and equal

21  enjoyment" of qualifying public accommodations.

22

23  154.   After the record has been further developed in this case, the Plaintiff plans to seek

24

25  **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

26  20

1    injunctive relief from this Court in Motion form, requesting that this Court order that he, too,

2    shall have full and equal access to this particular public accommodation.  (The Plaintiff has left

3    his requested injunctive relief as the Second Cause of Action, below, too)

4

5                                    **FIRST CAUSE OF ACTION**
                        **Violations of the Civil Rights Act of 1871 (42 USC § 1985(3))**
6

7    155.    The Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs

8            as though fully set forth herein.
9
10   156.    The individual Defendants conspired together to deprive Plaintiffs of his civil rights in

11           violation of 42 U.S.C. § 1985(3).

12   157.    The conspiracy included Frys employees, including Mr. Eza DOE and Ms. Michele DOE.

13   158.    Upon information and belief, other Frys employees are involved in the conspiracy.

14   159.    The conspirators engaged in overt acts in furtherance of the conspiracy, including the acts
15
16           alleged herein.

17   160.    This conspiracy targeted poor people, a protected class under 42 U.S.C. §1985(3).

18   161.    Alternatively and conjunctively, the conspiracy targeted people of foreign origin, another
19
20           protected class under 42 U.S.C. §1985(3).

21   162.    If the Plaintiff confirms that the Defendants conspired against him for being white or male,

22           two other protected classes under 42 U.S.C. §1985(3), the Plaintiff will amend this legal
23
         complaint.
24
25   **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW**
     **88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC**
     **ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS);**
26   **NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF**
     **EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
                                            21

163.    Among other impacts, the conspiracy interfered with Plaintiff's right to use public accommodations.

164.    The conspiracy also interfered with Plaintiff's right to be equal under the law, as protected by the Fourteenth Amendment of the United States Constitution.

165.    The conspiracy interfered with the Plaintiff's right for equal protection of the laws, and of equal privileges.

166.    The Plaintiff was damaged by the actions of Mr. Ezra DOE and Ms. Michele DOE, including suffering humiliation, embarrassment, anguish, and emotional distress.

167.    The actions of Mr. Ezra DOE and Ms. Michele DOE were the proximate cause of the Plaintiff's damages.

168.    Fry's is liable for the acts of its employees including Mr. Ezra DOE and Ms. Michele DOE.

169.    All allegations to be fully proven, including damages, at jury trial.

**SECOND CAUSE OF ACTION**
**Violations of Title II of the Civil Rights Act of 1964 (Public Accommodations)**

170.    The Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

171.    The lunch counter at Fry's food stores is a public accommodation, as defined in Title II of the Civil Rights Act of 1964, also codified at 42 U.S.C. § 2000a, originally passed as Public Law 88-352 (78 Stat. 241).

172.    The Plaintiff's civil rights have been violated under the same statute, Title II of the

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
22

1    Civil Rights Act of 1964 (Public Accommodations), also codified at 42 U.S.C. § 2000a.

2    173.    The First Incident of Discrimination occurred because Mr. Ezra DOE dislikes poor

3    people; Mr. Ezra DOE dislikes Europeans; and Mr. Ezra DOE is homophobic and dislikes gay

4    people.

5    174.    The Second Incident of Discrimination occurred because Mr. Ezra DOE and Ms.

6    Michele DOE are biased against poor people and because Mr. Ezra DOE and Ms. Michele DOE

7    are biased against foreigners.

8
9    175.    The Third Incident of Discrimination occurred because Mr. Ezra DOE and Ms.

10   Michele DOE are biased against poor people and because Mr. Ezra DOE and Ms. Michele DOE

11   are biased against foreigners.

12   176.    It is illegal for the two individual Defendants to discriminate against the Plaintiff in

13
14   public accommodations based on the Plaintiff's being poor.

15   177.    It is illegal for the two individual Defendants to discriminate against the Plaintiff in

16   public accommodations based on the Plaintiff's national origin.

17   178.    As per the Civil Rights act of 1964, "all persons shall be entitled to a full and equal

18   enjoyment" of qualifying public accommodations.

19
20                         **THIRD CAUSE OF ACTION**
                   **Negligent Hiring, Supervision and Retention**
21
22   179.    The Plaintiff realleges the previous paragraphs as if fully set out herein.

23

24   **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW**
25   **88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC**
     **ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS);**
26   **NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF**
     **EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
                                     23

180.    The Defendants knew or should have known that Mr. Ezra DOE and other Fry's employees presented an unreasonable risk of discrimination to Fry's customers.

181.    If Ezra DOE was not immediately fired by Fry's after management became aware of Mr. Ezra DOE's discriminatory acts against the Plaintiff, then Ms. Michele DOE and Fry's management have fully ratified all of Ezra DOE's discriminatory behavior.

182.    Further, if Ezra DOE was not immediately disciplined or fired by Fry's after management became aware of Mr. Ezra DOE's discriminatory acts against the Plaintiff, that serves as *prima facie* evidence of negligent supervision and negligent retention.

183.    The *Second Restatement of Agency §213* states that an employer conducting an activity through employees or agents of the employer is subject to liability for harm to a third party if the employer is negligent or reckless in: 1. Giving improper or ambiguous orders or in failing to make proper regulations of employees; 2. The employment of improper persons for work involving risk or harm to others; 3. The supervision of the employee's activities; or, 4. Permitting or failing to prevent negligent or other tortious conduct by persons, whether or not the employees upon the premises are under the employer's control.

184.    Alternatively and conjunctively, the Plaintiff alleges that not just one, but all four of the types of possible negligence are present in these fact patterns, to be further proven at jury trial:

- Giving improper or ambiguous orders or in failing to make proper regulations of employees;
- The employment of improper persons for work involving risk or harm to others;
- The supervision of the employees' activities;

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
24

- Permitting or failing to prevent negligent or other tortious conduct by persons, whether or not the employees upon the premises are under the employer's control.

185. The Plaintiff has been harmed as a direct result of the individual Defendants' negligence in training, managing, supervising and retaining Fry's employees.

186. The Plaintiff has been harmed as a direct result of Frys' negligence in training, managing, supervising and retaining Fry's employees.

187. The Defendants' negligence was a substantial factor in bringing about the Plaintiff's harm.

188. All allegations to be fully proven at jury trial, including the amount of damages.

### FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

189. The plaintiff realleges the previous paragraphs as if fully set out herein.

190. The Defendants' conduct in harassing the Plaintiff, threatening to have him arrested, and kicking him out of the food store was designed not only to directly harm the Plaintiff with loss of liberty and time, but was also intended to inflict emotional distress.

191. The Defendants either desired to inflict emotional distress on the Plaintiff or recklessly disregarded the near certainty that their conduct would in fact inflict emotional distress on the Plaintiff.

192. As a result of the Defendants' conduct the Plaintiff reasonably and foreseeably incurred significant emotional distress, feelings of being violated, including that his civil rights were violated, combined with the Plaintiff questioning why he was targeted and discriminated against.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

25

193.    All allegations and damages to be fully proven at jury trial, including the amount of damages.

### FIFTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

194.    The Plaintiff realleges the prior paragraphs as if fully set out herein.

195.    Defendants owed multiple duties to Plaintiff.

196.    For example, the Plaintiff was as a paying guest/customer at the Store, and a good one at that.

197.    The Defendants owed the Plaintiff a duty of reasonable care.

198.    The duty was breached due to Frys' employees' discriminatory acts.

199.    The Plaintiff has suffered significant stress over these issues and mental anguish, humiliation, and embarrassment.

200.    In breaching their duties of care, the Defendants directly caused the injuries to the Plaintiff.

201.    The Defendants, having violated their duty to the Plaintiff, are liable for their tortious and negligent conduct, including the emotional distress suffered by the Plaintiff, encompassing the Plaintiff's mental anguish and suffering.

202.    All allegations and facts to be further proven at jury trial in 2024, including the amount of damages.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

WHEREFORE, PLAINTIFF PRAYS:

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' violations of the Plaintiff's civil rights, along with the imposition of exemplary damages to deter the Defendants from violating others' civil rights in the future;

(b) As to Count II, the Plaintiff seeks a Court order re-instating the Plaintiff's rights and freedom in public accommodations, in particular at Fry's Signature store.   (After the discrimination the Plaintiff has suffered, the Plaintiff is not sure he wishes to shop at Fry's, but nevertheless, he seeks the *right* to shop there without fear of reprisal)

(c) As to Count III for all direct and consequential damages the Plaintiff incurred due to the Defendants' negligent retention and Defendants' negligent supervision along with the imposition of exemplary damages to deter the Defendants from committing such acts in the future;

(d) As to Count IV, for all damages proximately caused by the Defendants' intentional infliction of emotional distress as well as for the imposition of exemplary damages in an amount sufficient to punish and deter the infliction of emotional distress in the future;

(e) As to Count V for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' negligence infliction of emotional distress along with the imposition of exemplary damages to deter the Defendants from committing such acts in the future;

(f) For all costs of this lawsuit and of litigation;

(g) For future attorney fees;

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**

(h) For a reasonable value for the Plaintiff's time in having to represent himself until he hires an attorney to take this legal complaint the rest of the way through to jury trial.

(i) For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED

Carl A. Wescott, *pro se*

## VERIFICATION

I, Carl A. Wescott, under penalties of perjury provided by the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters regarding his beliefs. As to such matters of belief, the undersigned certifies that he verily believes the same to be true.       28 U.S.C. § 1746; 18 U.S.C. § 1621

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF PUBLIC LAW 88-352 (78 Stat. 241), 42 USC § 2000a, TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS); VIOLATIONS OF 42 USC § 1985(3) (CIVIL RIGHTS); NEGLIGENT RETENTION OR SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
28