**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl A Wescott, | No. CV-24-00198-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Plaintiff Carl A. Wescott ("Plaintiff") has filed an Application to Proceed in District Court Without Prepaying Fees or Cost (Doc. 2).  Upon review, Plaintiff's Application, signed under penalty of perjury, indicates that he is financially unable to pay the filing fee. The Court will grant Plaintiff's Application and allow him to proceed *in forma pauperis* ("IFP").  Pursuant to 28 U.S.C. § 1915(e)(2), the Court will proceed to screen Plaintiff's Complaint (Doc. 1) against Defendant Ezra Doe ("Mr. Ezra"), Defendant Michele Doe ("Ms. Michele") (together the "Individual Defendants"), and Defendant Fry's Food Stores of Arizona, Inc. ("Fry's") (collectively "Defendants").  Because Plaintiff's Counts One, Two, and Three adequately states claims under 42 U.S.C. § 1985(3), 42 U.S.C. § 2000a, and the state doctrine of negligent hiring, supervision, and retention, the Court will grant Plaintiff's Motion Requesting Order for Service Process (Doc. 6).

## I.    Legal Standard

The determination that Plaintiff may proceed IFP does not end the inquiry under 28 U.S.C. § 1915. When a party has been granted IFP status, the Court must review the

complaint to determine whether the action:

> (i)      is frivolous or malicious;

> (ii)     fails to state a claim on which relief may be granted; or

> (iii)    seeks monetary relief against a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915(e)(2)(B).[1]  In conducting this review, "section 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).  Rule 8(a) of the Federal Rules of Civil Procedure requires that:

> A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the court needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

---

[1]  "While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, §1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners." *Long v. Maricopa Cmty. College Dist.*, 2012 WL 588965, at *1 (D. Ariz. Feb. 22, 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n. 7 (9th Cir. 2000) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints[.]"); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") (citation omitted). Therefore, section 1915 applies to this non-prisoner IFP complaint.

[2]  "Although the *Iqbal* Court was addressing pleading standards in the context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the initial screening of a complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions." *McLemore v. Dennis Dillon Automotive Group, Inc.*, 2013 WL 97767, at *2 n. 1 (D. Idaho Jan. 8, 2013).

is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

To determine whether a plaintiff has failed to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same standards as those required under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Lopez*, 203 F.3d at 1127). The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court is mindful that it must "construe *pro se* filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). In line with this principle, the Court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130. However, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia v. Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.    Statutory Screening

Plaintiff's Complaint is based on alleged instances of discrimination he experienced while shopping at a Fry's grocery store. Plaintiff claims that Mr. Ezra and Ms. Michele—who are both Fry's employees—discriminated against him on the basis that he is of lower-class status and uses food stamps, is a foreigner with a European accent, and appears to be gay. (Doc. 1 at ¶¶ 20–25, 88). Plaintiff purports to bring various claims arising under the Civil Rights Act of 1871, Title II of the Civil Rights Act of 1964, and Arizona state tort doctrines of negligent supervision and infliction of emotional distress. (*Id.* at ¶¶ 155–202).

1    The Court will first provide an overview of Plaintiff's claimed experiences at Fry's before

2    turning to each of his claims.

3         **A.    Background[3]**

4         Plaintiff is a United States citizen of Finnish descent who grew up in Europe as a

5    child and has a European accent.    (*Id.* at ¶¶ 21–22).    He "has been on

6    foodstamps/EBT/ENAP for much of the last few years." (*Id.* at ¶ 20).  He "regularly had

7    burgundy, red, or pink nail polish on his nails" and "is not gay, but many people assume

8    he is gay." (*Id.* at ¶ 25).  Fry's is a grocery store chain operating approximately 125 stores

9    in Arizona. (*Id.* at ¶ 2).  Plaintiff regularly shopped at the Fry's on 9th Street in Scottsdale,

10   Arizona ("the Store") and used food stamps to purchase his groceries.  (*Id.* at ¶ 19–20).

11   Mr. Ezra works the Store's self-checkout machines (*Id.* at ¶ 32) and Ms. Michele is the

12   Store's "Front End Manager." (*Id.* at ¶ 62).  Plaintiff's claims are based on two incidents

13   that occurred at the Store in 2022 and 2024.

14        **1.    The 2022 Incident**

15        Sometime in 2022, Plaintiff claims that Mr. Ezra subjected him to discriminatory

16   conduct while he was purchasing items from the Store at the self-checkout machines.

17   (*Id.* at ¶¶ 26–55) ("the 2022 Incident").  After Plaintiff purchased his groceries with his

18   food stamps, he attempted to make a second transaction to purchase an edition of the New

19   York Times newspaper.  (*Id.* at ¶ 30–31).  Plaintiff maintains he habitually separated his

20   purchases at the Store in this manner because food stamps will only pay for food, not other

21   items.  (*Id.*)  However, before Plaintiff could purchase the newspaper, Mr. Ezra "grabbed

22   the Plaintiff's New York Times," "ran up the aisle and caused a scene (gesticulating wildly

23   with his arms while leaping up and down)," and "then threw the Plaintiffs [sic] paper on

24   the ground, stomping on the paper or near it and jumping up and down." (*Id.* at ¶¶ 31–34).

25   Plaintiff believes Mr. Ezra was discriminating against him because he was using food

26   stamps, is a foreigner, and had his nails painted.  (*Id.* at ¶¶ 36–49).  Plaintiff also believes

27

28   ─────────────
[3] Unless otherwise noted, these facts are taken from Plaintiff's Complaint (Doc. 1).  The Court will assume the Complaint's factual allegations are true, as it must when screening a *pro se* complaint.  *See Watison*, 668 F.3d at 1112.

Mr. Ezra wished to humiliate and embarrass Plaintiff. (*Id*. at ¶ 37). Plaintiff "is outraged and indignant for being discriminated against for being poor and European," felt "unwelcome at The Store," and "stopped coming to that Fry's store regularly." (*Id*. at ¶¶ 50, 45).

### 2.    The 2024 Incident

Plaintiff returned to the store on January 9, 2024, to shop for lunch and experienced an encounter with Mr. Ezra and Ms. Michele. (*Id*. at ¶¶ 56–134) ("the 2024 Incident"). "Plaintiff has often patronized Starbucks in Fry's and other Kroger-owned grocery chains, buying coffee, tea or matcha along with pastries, donuts, and other bakery items" and "then has a meal on-premises, consuming those purchased items, sometimes while reading the New York Times." (*Id*. at ¶ 59). When he walked by Mr. Ezra that day to the pre-made sushi lunch counter, Plaintiff noticed Mr. Ezra made a phone call to someone. (*Id*.) Plaintiff states that "Mr. Ezra [] likely called Ms. Michele [], because Mr. Ezra [] does not want poor Europeans at his store." (*Id*. at ¶ 60).

Ms. Michele then approached Plaintiff and told him he was "trespassed." (*Id*. at ¶¶ 61, 63). According to Plaintiff, "trespassed" is "Fry's vernacular meaning that a customer is no longer welcome on the premises, and that management will inform the customer he is trespassing and kick him out of The Store." (*Id*. at ¶ 65). Ms. Michele's reason for having Plaintiff trespassed is that "a police report had been filed against the Plaintiff, and that if the Plaintiff did not leave immediately, she would call the police, who would immediately arrest the Plaintiff." (*Id*. at ¶ 76). Plaintiff claims that when asked, Ms. Michele could not state what the police report concerned and what crime he had allegedly committed. (*Id*. at ¶ 77). However, Ms. Michele promised to get Plaintiff a copy of the police report. (*Id*. at ¶ 83). Plaintiff witnessed Ms. Michele walk over to Mr. Ezra to discuss the incident as Plaintiff left the Store. (*Id*. at ¶ 85). Plaintiff believes the two had communicated in the past about Plaintiff being a "poor, foreign customer." (*Id*. at ¶ 87). Plaintiff sent Ms. Michele a letter that same day to complain about his experiences and ensure both the 2022 and 2024 Incidents had been documented.

(*Id*. at ¶ 97).

On January 15, 2024, Plaintiff sent a follow-up email to Ms. Michele because he did not receive the alleged police report by email or mail. (*Id*. at ¶¶ 98–99). Plaintiff returned to the Store on January 22, 2024, to inquiry in-person and spoke with Mr. Ezra. (*Id*. at ¶ 103). Mr. Ezra told Plaintiff Ms. Michele would be with him "in a minute." (*Id*.) However, Plaintiff claims Ms. Michele left the Store and "did not want to face Plaintiff." (*Id*. at ¶¶ 103–109). Plaintiff believes Ms. Michele treated him this way because she "shares Mr. Ezra['s] biases, including against the poor and against foreigners." (*Id*. at ¶¶ 75).

### 3.     Plaintiff's Claims

Plaintiff filed his Complaint with the Court on January 29, 2024, asserting the following claims:

> **Count One** alleges the Individual Defendants conspired together to deprive Plaintiff of his civil rights in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3) (*id*. at ¶¶ 155–168);

> **Count Two** alleges the Individual Defendants deprived Plaintiff of his civil rights in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (*id*. at ¶¶ 170–178);

> **Count Three** alleges that Fry's was negligent in training, managing, supervising, and retaining its employees (*id*. at ¶¶ 179–188);

> **Count Four** alleges Defendants intentionally inflicted emotion distress on Plaintiff (*id*. at ¶¶ 189–193); and

> **Count Five** alleges Defendants negligently inflicted emotion distress on Plaintiff (*id*. at ¶¶ 194–202).

The Court will screen each claim in turn.

### B.     Count One: Violation of the Civil Rights Act of 1871

Plaintiff's first claim is that the Individual Defendants conspired together to deprive him of his civil rights in violation of Section 1985(3)[4] of the Civil Rights Act of 1871.

---

[4] Unless where otherwise noted, all Section and Subsection references are to Title 42 of the United States Code.

1    Section 1985 "is derived from the thirteenth amendment and covers all deprivations of

2    equal protection of the laws and equal privileges and immunities under the laws, regardless

3    of its source." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  Subsection 1985(3)

4    prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any

5    person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).  In

6    addition to conspiracies under color of state law, Section 1953 reaches "purely private

7    conspiracies."  *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993)

8    (citing *Griffin*, 403 U.S. at 102).

9        To state a claim for relief under Subsection 1985(3), a plaintiff must demonstrate

10   "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of

11   the laws, or of equal privileges and immunities under the laws, (3) an act by one of the

12   conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage

13   or a deprivation of any right or privilege of a citizen of the United States." *Gillespie*, 629

14   F.2d at 641 (citing *Griffin*, 403 U.S. at 102–03).  A plaintiff "must state specific facts to

15   support the existence of the claimed conspiracy."  *Olsen v. Idaho State Bd. of Medicine*,

16   363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotations omitted).  "A mere

17   allegation of conspiracy without factual specificity is insufficient."  *Karim-Panahi v. Los

18   Angeles Police Dep't.*, 839 F.2d 621, 623, 626 (9th Cir. 1988).  The plaintiff must show

19   that "each participant [in the conspiracy] . . . at least share[s] the common objective of the

20   conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th

21   Cir. 1989).  Additionally, "there must be some racial, or perhaps otherwise class-based,

22   invidiously discriminatory animus behind the conspirators' action."  *Griffin*, 403 U.S. at

23   102; *see also RK Ventures, Inc. v. Cty. of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002)

24   (plaintiffs under § 1985(3) must show "that they are members of a class that the

25   government has determined 'requires and warrant[s] special federal assistance in protecting

26   their civil rights.' ").

27       For the reasons set forth below, the Court finds that Plaintiff's allegations, when

28   accepted as true and liberally construed, states a claim under Subparagraph 1985(3) for

which relief can be granted.

**1.    Existence of a Conspiracy Motivated by Discriminatory Animus**

As to the first and second elements, Plaintiff adequately alleges the existence of a conspiracy.  Plaintiff states that Mr. Ezra and Ms. Michele conspired to discriminate against him by interfering with his right to use public accommodations.[5]  (Doc. 1 at ¶¶ 128, 157, 163).  Plaintiff's allegations that (1) Mr. Ezra called Ms. Michele to notify her that Plaintiff was in the Store so she could remove Plaintiff (*id.* at ¶ 60); (2) Ms. Michele went back to talk to Mr. Ezra after Plaintiff's removal (*id.* at ¶ 85); (3) Mr. Ezra and Ms. Michele had communicated in the past about Plaintiff being a "poor, foreign customer" (*id.* at ¶ 87); and (4) Mr. Ezra relayed communications between Plaintiff and Ms. Michele (*id.* at ¶¶ 102–109) support the existence of the claimed conspiracy with sufficient detail.  *See Olsen*, 363 F.3d at 929.

Additionally, Plaintiff represents that Mr. Ezra and Ms. Michele shared the same biases and common objective of the alleged conspiracy by removing Plaintiff from the Store because they did not want "poor Europeans" at the Store.  (Doc. 1 at ¶ 60); *see United Steelworkers*, 865 F.2d at 1541.  Plaintiff claims Mr. Ezra and Ms. Michele were aware of and took issue with Plaintiff's European accent and use of foodstamps.  (Doc. 1 at ¶¶ 43, 36, 88).  From these facts, Plaintiff concludes "the conspiracy targeted poor people" and "people of foreign origin," which are protected classes for the purpose of Subsection 1985(3).[6]  (*see* Doc. 1 at ¶¶ 160–61); *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) ("We have extended § 1985(3) to protect non-racial groups only if 'the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or . . . Congress has indicated through legislation that the class require[s] special protection.' ").  These allegations sufficiently establish that the alleged conspirators' actions were motivated at least in part by discriminatory animus

---

[5] As explained *supra*, the Court finds Plaintiff sufficiently alleges the Store is a place of public accommodation for the purpose of Title 42.  *See supra* Section II.C(2).

[6] Plaintiff represents that "it is not illegal in Arizona for Mr. Ezra [] to discriminate against the Plaintiff in a retail store or a public accommodation for being gay[.]"  (Doc. 1 at ¶ 51).

1    toward Plaintiff's national origin and lower-class status. *See Griffin*, 403 U.S. at 102.

2                    **2.        Acts by the Conspirators**

3    As to the third element, Mr. Ezra's actions stomping on Plaintiff's newspaper in the

4    2022 Incident and reporting Plaintiff to Ms. Michele—which led to his removal from the

5    Store—in the 2024 Incident show Mr. Ezra performed acts in furtherance of the conspiracy.

6    Ms. Michele's actions in labelling Plaintiff as "trespassed," removing Plaintiff from the

7    Store, and claiming a false police report against Plaintiff in the 2024 Incident likewise show

8    Ms. Michele performed acts in furtherance of the conspiracy. *See United Steelworkers of*

9    *Am.*, 865 F.2d at 1541.

10                    **3.        Resulting Harm**

11    Last, Plaintiff sufficiently claims harm resulting from the conspiracy to satisfy the

12    fourth element. He states he "was damaged by the actions of Mr. Ezra [] and Ms. Michele

13    [], including suffering humiliation, embarrassment, anguish, and emotional distress."

14    (Doc. 1 at ¶ 166). He further represents he felt unwelcome at the Store and stopped going

15    to the Store." (*Id*. at ¶¶ 50, 45). Thus, Plaintiff states adequate facts to support his

16    conclusion that the conspiracy "interfered with [his] right to use public accommodations,"

17    "right to be equal under the law, as protected by the Fourteenth Amendment of the United

18    States Constitution" and "right for equal protection of the laws, and of equal privileges."

19    (*Id*. at ¶¶ 163–165).

20    In sum, Plaintiff's Count One meets all four elements to support a Subsection 1983

21    claim against the Individual Defendants.

22            **C.        Count Two: Violation of Title II of the Civil Rights Act of 1964**

23    Plaintiff's next claim is that the Individual Defendants deprived him of his civil

24    rights in violation of Section 2000a of Title II of the Civil Rights Act of 1964. Title II

25    enacted "a sweeping prohibition of discrimination or segregation on the ground of race,

26    color, religion, or national origin at places of public accommodation whose operations

27    affect commerce." *Daniel v. Paul*, 395 U.S. 298, 301 (1969). "To establish a *prima facie*

28    case under [Section] 2000a, a plaintiff must demonstrate that he: '(1) is a member of a

protected class; (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better.' " *Dragonas v. Macerich*, 2021 WL 363852, *4 (D. Ariz. Feb. 3, 2021) (quoting *Crumb v. Orthopedic Surgery Med. Grp.*, 2010 WL 11509292, at *3 (C.D. Cal. Aug. 18, 2010), *aff'd*, 479 F. App'x 767 (9th Cir. 2012)) (applying the *prima facie* elements when evaluating a motion to dismiss a *pro se* complaint under Rule 12(b)(6)).  The Court will address each *prima facie* element.

### 1.    Member of a Protected Class

First, Plaintiff alleges he was discriminated against based on his lower-class status, his national origin, and his appearance as gay.  (Doc. 1 at ¶¶ 20–25, 88).  Section 2000a states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or *national origin*."  42 U.S.C. § 2000a(a) (emphasis added).  Plaintiff has thus shown he is a member of a protected class under element one based on his European origin. *See* 42 U.S.C. § 2000a(a).  However, Plaintiff cannot bring a claim based on his lower-class status or his appearance as gay because Section 2000a does not designate those characteristics as protected.  *See* 42 U.S.C. § 2000a(a); *c.f. San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 19 (1973) ("[T]he class of disadvantaged 'poor' cannot be identified or defined in customary equal protection terms[.]"); *Kelly v. U.P.S. Store*, 2021 WL 2256264, *2 (D. Mont. June 3, 2021), *report and recommendation adopted*, 2021 WL 2646985 (D. Mont. June 28, 2021) ("Title II does not prohibit discrimination on the basis of age, sex, or gender.").

### 2.    Place of Public Accommodation

For purposes of the second element, Section 2000a defines a place of public accommodation *inter alia* as "any restaurant, cafeteria, lunchroom, lunch counter, soda

fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station[.]" 42 U.S.C. § 2000a(b)(2). Plaintiff avers he "often patronized Starbucks in Fry's . . . buying coffee, tea or matcha along with pastries, donuts and other bakery items. [] Plaintiff then has a meal on-premises, consuming those purchased items[.]" (*Id.* at ¶ 59). Plaintiff also represents the 2024 Incident occurred while he was "standing at the on-site pre-made-sushi counter and picking out sushi to eat for lunch[.]" (*Id.* at ¶ 61). So, Plaintiff adequately establishes the Store is a place of public accommodation from which he attempted to contract for services.

### 3. Denied Services

As to the third element, Plaintiff's recount of the 2022 and 2024 Incidents demonstrate he was denied the full benefits or enjoyment of the Store as a public accommodation. *Dragonas*, 2021 WL 363852, at *4. For example, Plaintiff claims Mr. Ezra interfered with his ability to purchase food and other items from the Store. (Doc. 1 at ¶¶ 31–49). Plaintiff also states that Ms. Michele, with Mr. Ezra's assistance, removed Plaintiff from the Store while he attempted to purchase lunch for on-site consumption by designating Plaintiff as "trespassed" and fabricating a false police report against Plaintiff. (*Id.* at ¶¶ 59–99).

### 4. Treatment of Others

Finally, Plaintiff states he "doubts that most Fry's customers, especially those who are not of foreign national origin and poor- get this treatment that he received." (*Id.* at ¶ 91). The Court finds Plaintiff's allegations, when liberally construed, are sufficient to show the Store's "services were available to similarly situated persons outside [Plaintiff's] protected class who received full benefits or were treated better." *Dragonas*, 2021 WL 363852, at *4.

In sum, Plaintiff's Count Two meets all four elements to support a Section 2000a claim against the Individual Defendants.

/ / /

### D.    Count Three: Negligent Hiring, Supervision, and Retention

Plaintiff's third claim is that Fry's was negligent in training, managing, supervising, and retaining the Individual Defendants as employees.   Arizona courts have applied Restatement (Second) of Agency § 213 (1958) to consider these types of claims. *See e.g.*, *Kassman v. Busfield Enters.*, *Inc*., 639 P.2d 353, 356 (Ariz. Ct. App. 1981); *Olson v. Staggs-Bilt Homes, Inc.*, 534 P.2d 1073, 1076 (Ariz. Ct. App. 1975). An employer is liable under a theory of negligent hiring, retention, and supervision if it fails to make proper regulations; employs improper persons involving risk of harm to others; fails to supervise activity; or permits or fails to prevent negligent or other tortious conduct by employees or agents on the premises or with instrumentalities under the employer's control.  Restatement (Second) of Agency § 213 (1958).  For an employer to be held liable under this theory, a court must first find that the employee committed a tort.  *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) ("If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee.").   The Court finds Plaintiff, at minimum, has adequality stated a claim for negligent supervision.

"For an employer to be held liable for negligent supervision under Arizona law, a plaintiff must demonstrate (1) that the employer knew or should have known that the employee was not competent to perform the assigned task and (2) that the employer's failure to supervise the employee caused the plaintiff's injury." *Charley v. United States*, 437 F. Supp. 3d 745 (D. Ariz. 2020) (citation omitted).  Plaintiff claims Fry's knew or should have known about Mr. Ezra and Ms. Michele's behavioral issues due to their repeated incidents of discrimination.  (Doc. 1 at ¶¶ 130–131).  And the Court has already found that the Individual Defendants may be held liable under Subparagraph 1985(3) and Section 2000a.  Therefore, Plaintiff's employer negligence claim may move forward.

### E.    Count Four: Intentional Infliction of Emotion Distress

Plaintiff's next claim is for intentional infliction of emotional distress, which requires a showing that (1) the defendant's conduct is "extreme" and "outrageous;"

(2) defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from his conduct; and (3) severe emotional distress indeed occurred as a result of defendant's conduct.  *See Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)); *see also Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994).  The plaintiff must demonstrate the defendant's acts were, "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (internal quotation marks and citation omitted). "Because 'severe emotional distress' is not readily capable of precise legal definition, Arizona courts apply a case-by-case analysis with respect to these determinations." *Larsgard v. Mendoza*, 2012 WL 3704680, at *4 (D. Ariz. Aug. 28, 2012) (citing *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 716 P.2d 1013, 1016 (Ariz. 1986)).

### 1.    The Individual Defendants

The Court finds Plaintiff has failed to state a claim against the Individual Defendants because he does not claim severe emotional distress.  Plaintiff maintains he suffered "humiliation, embarrassment, anguish, and emotional distress."  (Doc. 1 at ¶ 166). However, "a line of demarcation should be drawn between conduct likely to cause mere emotional distress and that causing severe emotional distress." *Malkan v. Omni Hotels Mgmt. Corp.*, 2021 WL 86768, at *3 (D. Ariz. Jan. 11, 2021) (quoting *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982)).  Even when taken as true, Plaintiff's allegations do not demonstrate the requisite severity of harm.  *See e.g., Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) (finding "crying, being stressed and upset, and having headaches" insufficient to establish "severe emotional distress"). Plaintiff therefore fails to state a claim for intentional infliction of emotional distress against the Individual Defendants.

### 3.    Fry's

Plaintiff also asserts an intentional inflicted of emotion distress claim against Fry's.

Under Arizona law, intentional tort liability of an employer can be established in two ways: (1) derivative liability based solely on the negligence of the employer's employee; and (2) independent liability based on the employer's independent negligence. *Ford*, 734 P.2d at 584. Plaintiff appears to assert the former theory. But because Plaintiff has failed to state a claim for intentional infliction of emotional distress against the Individual Defendants, he cannot establish derivative liability against Fry's.

In sum, Plaintiff's Count Four fails to state a claim against any Defendant upon which relief can be granted and will be dismissed.

### F.    Count Five: Negligent Infliction of Emotional Distress

Plaintiff's last claim is for negligent infliction of emotional distress against all Defendants, which requires that the "the emotional distress inflicted must be manifested as a physical injury." *Evans v. McAllister*, 2023 WL 3994914, at *3 (D. Ariz. June 14, 2023) (quoting *Rowland v. Union Hills Country Club*, 757 P.2d 105, 108 (Ariz. App. 1988)). Although Plaintiff alleges emotional harm generally, Plaintiff does not allege any resulting physical injury. Therefore, Plaintiff's Count Five fails to state a claim upon which relief can be granted and will be dismissed.

### G.    Conclusion

The Court will dismiss Plaintiff's Counts Four and Five for intentional and negligent infliction of emotional distress without prejudice. However, Plaintiff's Count One against the Individual Defendants for violation of Subsection 1985(3), Count Two against the Individual Defendants for violation of Section 2000a, and Count Three against Fry's for negligent hiring, supervision, and retention of the Individual Defendants may move forward.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Carl A. Wescott's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Counts Four and Five for intentional and negligent infliction of emotional distress are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Order for Service Process (Doc. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

(1)  The Clerk of Court must send Plaintiff a service packet including this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Fry's Food Stores of Arizona, Inc., Mr. Ezra Doe, and Ms. Michele Doe.

(2)  Plaintiff must complete and return the service packets to the Clerk of Court within **21 days** of the date of filing of this Order.  **The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.**

(3)  Pursuant to Fed.R.Civ.P. 4(m), the Court hereby extends the time limit for service to **60 days** from the date of this Order.  If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint, on Defendants within **60 days** of the filing of this Order, the action may be dismissed as to each Defendant not served.

(4)  The United States Marshal must retain the Summons, a copy of the Complaint and a copy of this Order for future use.

(5)  The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)  personally serve copies of the Summons, Complaint, and this Order upon the Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)  within **10 days** after personal service is effected, file the return of service for the Defendant, along with evidence of the attempt to secure a waiver of service of the

summons and of the costs subsequently incurred in effecting service upon the Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(6)    **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(7)    the Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FINALLY ORDERED** that Plaintiff must become familiar, and comply, with the Federal Rules of Civil Procedure ("Rules") and the Local Rules of Practice for the District Court for the District of Arizona ("Local Rules"). Plaintiff is encouraged to consult the resources for self-represented litigants available on the Court's website at http://www.azd.uscourts.gov/proceeding-without-attorney. Of note, the Court provides a Handbook for Self-Represented Litigants (https://www.azd.uscourts.gov/handbook-self-represented-litigants), as well as forms for scheduling an appointment with a volunteer lawyer at the Free Advice-Only Clinic at the Phoenix courthouse (https://www.azd.uscourts.gov/federal-court-advice-only-clinic-phoenix).

Dated this 30th day of May, 2024.

Honorable Diane J. Humetewa
United States District Judge