Robert B. Zelms, Arizona Bar No. 018956
rzelms@zelmserlich.com
Courtney D. Casiano, Arizona Bar No. 034430
ccasiano@zelmserlich.com
Anastasia V. White, Arizona Bar No. 039007
awhite@zelmserlich.com
**ZELMS ERLICH LENKOV & MACK**
5415 E. High Street, Suite 425
Phoenix, Arizona 85054
Phone: (480) 608-2114

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl A. Wescott, | Case No. CV-24-00198-PHX-DJH |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Mr. Ezra Doe; Ms. Michele Doe; Fry's Food Stores of Arizona, Inc., | |
| Defendants. | |

Pursuant to Rules 8 and 12(b)(6) of the Arizona Rules of Civil Procedure Defendants Fry's Food Stores of Arizona, Inc., ("Fry's"), Mr. Ezra Alcala ("Ezra"), and Michelle Declerca ("Michelle"), (collectively "Defendants"), by and through undersigned counsel, hereby move to dismiss the Complaint, as against them, in its entirety.

### MEMORANDUM OF POINTS AND AUTHORITY

### I.   INTRODUCTION

Plaintiff brings claims against the Individual Defendants for alleged conspiracy to interfere with his civil rights including his right to public accommodations, and a claim of negligent supervision against Fry's which are insufficiently pled in the instant Complaint. As explained herein, all three claims should be dismissed pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for

1

failure to state a claim, respectively.

## II.  FACTUAL BACKGROUND

### A.  Background

Plaintiff, a resident of Scottsdale, Arizona, claims he regularly patronized his nearby Fry's Signature store ("Fry's store") located at 10450 N. 90th Street in Scottsdale.  See Compl., ECF Dkt. No. 1, ¶¶ 18-19, 21.  Plaintiff alleges that he is a United States citizen of Finnish descent, as his mother was Finnish and grew up in Europe as a child.  Id. at ¶ 21.  Plaintiff claims to have a "slight lilt" and that he "sounds more European than American."  Id. at ¶ 22.  Plaintiff claims that back in 2022, he regularly wore nail polish on his fingernails.  Id. at ¶ 24.  Plaintiff additionally alleges that he is not gay, but that many people assume he is gay.  Id. at ¶ 25.  Over the last few years, Plaintiff has been receiving government assistance in the form of "food stamps/EBT/SNAP."  Id. at ¶ 20.

### B.  The 2022 Incident

Plaintiff alleges that on an unspecified date in late 2022, he was at the self-checkout kiosk inside of the Fry's store and was in the process of checking out certain food items, as well as a copy of an edition of the New York Times ("NYT").  Id. at ¶¶ 26-29.  Plaintiff first checked out only his food items and used his EBT card to complete this purchase.  Id. at ¶¶ 26, 30.  Plaintiff claims that before he could proceed with separately purchasing a copy of the NYT using a debit card, Ezra Alcala ("Ezra"), a Fry's employee who was assigned to the self-checkout area, "came and grabbed" the copy from Plaintiff.  Id. at ¶¶ 31-32.  Plaintiff claims that Ezra "ran up the aisle and caused a scene" by "gesticulating wildly with his arms while leaping up and down."  Id. at ¶ 33.  Ezra then allegedly threw Plaintiff's copy of the NYT on the ground and stomped on the copy "or near it" and jumped up and down.  Id. at ¶ 34.  Plaintiff assumed at the time that Ezra acted this way because Ezra wished to humiliate and embarrass him as a result of Plaintiff using food stamps.  Id. at ¶¶ 36-37.  Plaintiff does not allege that Ezra said anything to him during the incident or to any individuals who may have been around to witness the incident.  Nor does Plaintiff allege that he attempted to speak with Ezra or any other Fry's employee regarding Ezra's conduct.

Plaintiff claims that Ezra knew that Plaintiff was poor, as well as "linguistically European" because Plaintiff had prior interactions with Ezra. Id. at ¶ 41. However, Plaintiff only identifies one instance in which he interacted with Ezra, which was when Plaintiff asked Ezra for assistance in signing up for a Fry's VIP card. Id. at ¶ 41. Plaintiff does not claim that Ezra ever saw him make a purchase with his EBT card.

### C. The January 9, 2024 Incident

Plaintiff returned to the Fry's store on or around January 9, 2024, to purchase lunch. Id. at 57. That day, Plaintiff walked past Ezra towards the pre-made sushi counter. Id. at ¶ 60. Plaintiff claims that right after he walked past Ezra he observed Ezra making a phone call. Id. Plaintiff assumes Ezra likely called Michelle Declerca ("Michelle"), who was "Front End Manager. Id. at ¶¶ 60, 62. While Plaintiff was standing at the pre-made sushi counter scanning the sushi options, he claims that Michelle approached him and allegedly told Plaintiff that he "had been "trespassed"" and that if Plaintiff did not leave, he would be arrested. Id. at ¶¶ 61, 63, 66. Plaintiff claims that "trespassed" is "Fry's vernacular" for when "a customer is no longer welcome on the premises" which meant that management would inform the customer that they were trespassing and "kick him out of [t]he [s]tore." Id. at ¶ 65. Michelle told Plaintiff that if he ever returned to the Fry's store, he would be arrested. Id. at ¶ 66.

Plaintiff claims he asked Michele to explain why he was being "trespassed" and what he had done wrong, but Michelle could not provide any explanation. Id. at ¶ 69. Eventually, Michelle allegedly told Plaintiff that a police report had been filed against him, but she would not provide Plaintiff with any additional information about the police report, including what it stated and what crime he was alleged to have committed. Id. at ¶¶ 76-77. Michelle did not identify who had filed the police report against Plaintiff. Moreover, Michelle stated that she was unaware of "anything that [] Plaintiff had done wrong" or any crime committed by Plaintiff. Id. at ¶ 78.

Plaintiff requested a copy of the police report and Michelle "promised to get it to him." Id. at ¶ 83. Plaintiff provided Michelle with his contact information and then left the

Fry's store. Id. at ¶ 84. As he left the store, he noticed Michelle was speaking with Ezra, whom Plaintiff assumes had called Michelle to get her to kick Plaintiff out of the store. Id. at ¶ 85. It was at this moment that it "dawned" on Plaintiff what was happening and why neither Ezra nor Michelle could come up with a valid reason for kicking him out of the store. Id. at ¶ 86. Plaintiff surmised that Ezra had called Michelle when Plaintiff entered the store and that the two of them had "communicated in the past about Plaintiff, their poor, foreign customer." Id. at ¶ 87.

### D. The January 22, 2024 Incident

By January 15, 2024, Plaintiff followed up in writing on his request for a copy of the police report. Id. at ¶ 97. On January 22, 2024, Plaintiff printed out his last written request for the police report and went to the Fry's store to speak with Michelle. Id. at ¶ 101. At the store, Plaintiff approached Ezra and explained that he was requesting a copy of the police report, to which Ezra responded by asking Plaintiff to wait and that Michelle would be there "in a minute." Id. at ¶¶ 102-3. Plaintiff claims he waited between 10 to 15 minutes before he checked in with Ezra again. Id. at ¶ 104. At that time, Ezra told Plaintiff that Michelle was taking "a long lunch" and was not in the store, and that she would not be back until after 3:00 p.m. Id. at ¶ 105. Plaintiff claims that Ezra knew Michelle had left the store when Ezra told Plaintiff that Michelle would meet with Plaintiff "in a minute." Id. at ¶ 106. Plaintiff alleges that in Ezra's mind, Plaintiff was a "second-class citizen" and "unworthy" of that information. Id. at ¶ 107. Plaintiff claims that Michelle did not want to face Plaintiff that day because she was exposed of "her biases and lies about the police report." Id. at ¶ 108.

Plaintiff claims that as of January 27, 2024, he had not received a copy of the alleged police report and he assumes there is no police report. Id. at ¶¶ 111-12. Plaintiff alleges that if no police report actually exists, that that is "*prima facie* evidence of [Ezra's] and [Michelle's] discrimination." Id. at ¶ 117 (italics in original). Moreover, Plaintiff alleges that both Ezra and Michelle lied to "cover their biases against the poor, against foreigners, and possibly [Michelle's] bias against []Plaintiff as a male." Id. at ¶ 118.

### E. Procedural History

Plaintiff filed his Complaint on January 29, 2024 asserting (Count 1) that the Individual Defendants conspired to deprive Plaintiff of his civil rights in violation of the Civil Rights Act of 1871, 42 U.S. § 1985(3) (Id. at ¶¶ 155-68); (Count 2) that the Individual Defendants deprived Plaintiff of his civil rights in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Id. at ¶¶ 170-78); (Count 3) that Fry's was negligent in training, managing, supervising, and retaining its employees (Id. at ¶¶ 179-88); and (Counts 4 and 5) that all Defendants both intentionally and negligently inflicted emotional distress on Plaintiff (Id. at ¶¶ 189-202).

On May 31, 2024, this Court screened Plaintiff's complaint pursuant to 28 U.S. § 1915(e)(2) and dismissed Counts Four and Five without prejudice. See Dkt. No. 9. This Court indicated that Count One against the Individual Defendants (§ 1985(3)), Count Two against the Individual Defendants (Title II), and Count Three against Fry's (negligent hiring, supervision, and retention of the Individual Defendants) could move forward. Id.

All Defendants were served on October 7, 2024. See Dkt. Nos. 17-19.

### III. LEGAL ARGUMENT

#### A. Plaintiff's Title II Claims Against the Individual Defendants Require Dismissal For Lack of Subject-Matter Jurisdiction.

Since Plaintiff brings a Title II claim, which prohibits discrimination in places of public accommodation based on "race, color, religion, or national origin," he needs to comply with Title II's notice provision which articulates that Plaintiff shall not bring a civil action "before the expiration of thirty days after written notices of such alleged act or practice has been given to the appropriate State or local authority," where such state has a law "prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice." 42 U.S.C. § 2000a-3(c). Here, the Complaint does not allege that Plaintiff notified the Arizona Civil Rights Division ("ARCD"), a division of the Arizona Attorney General's Office specifically designated to review civil rights complaints and enforce the Arizona Civil Rights Act, which Plaintiff was required to

do prior to commencing this action. See Dragonas v. Macerich, 2021 U.S. Dist. LEXIS 20386, *6 (Feb. 3, 2021) (citing A.R.S. § 41-1401 of the Arizona Civil Rights Act which prohibits the denial of the "advantages, facilities or privileges" of a place of public accommodation "because of race, color, religion, sex, national origin or ancestry.").

Because the Complaint fails to indicate whether Plaintiff notified the ARCD, Plaintiff has not complied with Title II's notice requirement. Thus, Plaintiff's Title II claim against the Individual Defendants must be dismissed as this Court lacks jurisdiction to hear the Title II claim. See Dragonas, 2021 U.S. Dist. LEXIS 20386 at *7-8.

**B.   The Complaint Fails to State Any Claim Upon Which Relief Can Be Granted And Thus, Should Be Dismissed With Prejudice.**

**i.   The Legal Standard**

In determining the sufficiency of a complaint under Rule 12(b)(6), the substantive allegations of the complaint should be accepted as true. See, e.g., Citizens' Comm'n. for Recall of Jack Williams v. Marston, 109 Ariz. 188, 192, 507 P.2d 113, 117 (1973). In deciding a Rule 12(b)(6) motion, however, the Court must set aside any unsupported and conclusory allegations in a complaint and focus on whether the factual allegations state a valid claim for relief. Aldabbagh v. Ariz. Dep't. of Liquor Licenses, 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (App. 1989). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678; see also Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) ("a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible"). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation or an unadorned, the-defendant-unlawfully-harmed-me accusation." Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir. 2018) (internal quotation marks and citations omitted). Thus, a motion to dismiss for failure to state a claim should be granted if, even assuming the truth of the complaining party's factual allegations, the complainant would not be entitled to relief under any interpretation of the facts susceptible to proof. Phoenix Newspapers, Inc. v. Dep't of

Corrections, State of Arizona, 188 Ariz. 237, 242, 934 P.2d 801, 806 (App. 1997).

### ii. Plaintiff's First Cause of Action Requires Dismissal Because Plaintiff Does Not Plausibly Allege That The Individual Defendants Conspired to Interfere With His Civil Rights.

The Complaint fails to set forth any factual allegations showing that the Individual Defendants reached an agreement with a common objective of violating Plaintiff's civil rights under § 1985(3). § 1985(3)) "imposes liability on two or more persons who "conspire . . . for the purpose of depriving. . . any person or class of persons of the equal protection of the laws.""" Ziglar v. Abbasi, 582 U.S. 120, 150 (2017).  To state a claim under § 1985(3), Plaintiff must sufficiently allege the existence of "(1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States." Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citation omitted). Here, the Plaintiff fails to establish any of these required elements as the Complaint's allegations are rife with legal conclusions and assumptions.

As to the first element, Plaintiff fails to show "an agreement or 'meeting or the minds'" [between the Individual Defendants] to violate his constitutional rights and he also fails to show that the Individual Defendants shared "the common objective of the conspiracy."  See Libman v. United States, 2024 U.S. App. LEXIS 12069, *8 (May 20, 2024) (memorandum decision, a copy of which is annexed) (citing Frankin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) and United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)).  As an initial matter, Plaintiff claims, without any sound basis, that the Individual Defendants conspired to deprive Plaintiff of his civil rights, including his right to use public accommodations, by targeting poor people and people of foreign origin, both of which are protected classes.  See id. ¶¶ 160-61, 163.  As support, he claims that the Individual Defendants "had communicated in the past about [] Plaintiff, their poor, foreign customer" when Plaintiff observed Michelle walking towards Ezra both before

and after asking Plaintiff to leave the premises on January 9, 2024. See Compl. at ¶¶ 85, 87. He bolsters this claim by the unsupported conclusion that "Mr. Ezra[] likely called Ms. [Michelle], because Mr. Ezra[] does not want poor Europeans at his store[.]" See id. at ¶ 60.

Importantly, Plaintiff does not allege that Ezra and Michelle conspired to discriminate Plaintiff because he was a "poor European[]" at any point before the 2022 incident. Plaintiff merely claims the existence of a conspiracy in 2022 **after** the 2024 incidents. Additionally, Plaintiff provides no additional information to support his assumptions aside from his own perception of what he observed. These bare, unsupported allegations of a conspiracy among Defendants and a "conclusory allegation of agreement at some unidentified point" are wholly speculative and insufficient to state a claim as they do not show any illegality. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57 (2007) ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); see also Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) ("[E]ach participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy," and Plaintiff must show "an agreement or meeting of the minds.").

As to the second element, Plaintiff speculates that Ezra knew Plaintiff was poor, as well as "linguistically European" because Plaintiff had prior interactions with Ezra, but the one interaction Plaintiff cites—when he previously asked Ezra for a Fry's VIP card—does not articulate how Ezra would know that Plaintiff was "linguistically European" from that interaction. See id. at ¶ 41. Nor does Plaintiff claim that Ezra ever saw Plaintiff make a purchase with his EBT card which would make Ezra aware that Plaintiff was "poor." Similarly, as to Michelle's allegedly discriminatory animus, Plaintiff merely alleges that she had "biases" when she lied to Plaintiff about the police report. See id. at ¶ 108.

With regard to the third element, Plaintiff merely speculates that Ezra stomping on Plaintiff's NYT copy and allegedly reporting Plaintiff to Michelle demonstrates that Ezra performed acts in furtherance of their conspiracy. See id. at ¶ 60. Additionally, Plaintiff baselessly alleges that Michelle's act of asking Plaintiff to leave the premises and claiming

a police report was filed against Plaintiff were acts performed in furtherance of their conspiracy. See id. at 75, 86. The Complaint fails to allege "invidiously discriminatory class-based animus" and also fails to "allege facts showing this invidiousness."). Wolde-Giorgis v. Salt River Project Agric. Improvement & Power Dist., 2011 Ariz. App. Unpub. LEXIS 366, *12-3 (Jan. 25, 2011) (memorandum decision, a copy of which is annexed) (citing Aldabbagh v. Ariz. Dep't. of Liquor Licenses, 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (App. 1989)). Plaintiff's allegations are bare legal conclusions that are similar to the plaintiff's allegations in Wolde-Giorgis, where the court found that the plaintiff's claim, that the defendants' overt acts were in furtherance of a conspiracy, were mere conclusory statements and thus insufficient under Arizona's pleading standards. See Wolde-Giorgis, 2011 Ariz. App. Unpub. LEXIS 366 at *8-10, 12-13. As in Wolde-Giorgis, Plaintiff's allegations regarding the acts done in furtherance of a conspiracy are similarly deficiently pled as they are also conclusory statements based on Plaintiff's perceptions and speculations.

As to the fourth element, Plaintiff alleges that he was damaged by Ezra and Michelle's actions, see Compl. at ¶ 166, and he further claims that he stopped patronizing the Fry's store after the 2022 incident because he felt unwelcome. See Compl. at ¶¶ 45, 50. However, Plaintiff later contradicts himself by alleging that he had returned to the store "a few times . . . when in the area" and most notably, returned to the store on January 9, 2024 to pick up lunch and other food items. See Compl. at ¶¶ 54-55, 57. Thus, Plaintiff's claims of harm resulting from Defendants' allegedly discriminatory conduct are similarly conclusory and insufficient to state a claim.

### iii. Plaintiff's Second Cause of Action Requires Dismissal Because Plaintiff Does Not Plausibly Allege That The Individual Defendants Violated Plaintiff's Right to Public Accommodations.

Even if Plaintiff had complied with Title II's notice requirement, the Complaint nevertheless fails to establish that the Individual Defendants denied Plaintiff the full benefits of enjoyment of a public accommodation that were otherwise available to similarly situated persons outside Plaintiff's protected class. See 42 U.S.C. § 2000a(a). "To establish a *prima*

*facie* case under [Section] 2000a, a plaintiff must demonstrate that he: '(1) is a member of a protected class; (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better.'" Dragonas, 2021 U.S. Dist. LEXIS 20386 at *4. As Plaintiff alleges that he is a member of a protected class based on his European origin, for purposes of this motion to dismiss, Plaintiff satisfies the first element. Additionally, Plaintiff satisfies the second element because he alleges that Fry's has a Starbucks inside of its store, as well as pre-made meals. See Compl. at ¶¶ 59, 61.

Plaintiff only satisfies elements (2) and (3) as it relates to the January 9, 2024 incident when he was asked to leave the store while he attempted to purchase a pre-made lunch at the Fry's store's sushi counter. See id. at 59-99. However, with regard to the 2022 incident, Plaintiff cannot satisfy these elements because Ezra's actions that allegedly kept Plaintiff from purchasing a copy of the NYT, do not fall within Title II's purview. See 42 U.S.C. § 2000a(b). Moreover, Plaintiff's claim that he "doubts that most Fry's customers, especially those who are not of foreign origin . . . get this treatment that he received," see Compl. at ¶ 91, fails to sufficiently allege that any benefits he was denied were available to similarly situated non-members of Plaintiff's status as a "foreigner".

### iv. Plaintiff's Third Cause of Action Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege a Claim for Negligent Retention or Supervision As Against Fry's.

Plaintiff fails to adequately allege that Fry's was negligent in supervising the Individual Defendants as employees because the basis of Plaintiff's claim as it relates to the Third Cause of Action is based on pure speculation and conjecture. To consider claims of negligent supervision, Arizona courts apply Restatement (Second) of Agency § 213 (1958), which provides, *inter alia*, that an employer is liable under a theory of negligent supervision if it fails to supervise activity or fails to prevent negligent or other tortious conduct by

employees or agents on the premises or with instrumentalities under the employer's control. Thus, Plaintiff must demonstrate—which he does not—that "(1) the employer knew or should have known that the [Individual Defendants were] not competent to perform the assigned task and (2) that the employer's failure to supervise the [Individual Defendants] caused [Plaintiff's] injury." Charley v. United States, 437 F. Supp. 3d 745, 750 (D. Ariz. 2020) (finding that Plaintiff failed to state a claim for negligent supervision because the plaintiff did not allege that the alleged tortfeasors were not competent to perform their duties, or that their employer should have known that they were not competent and failed to supervise them) (citation omitted); see also Slim v. United States, et al., 2016 U.S. Dist. LEXIS 86384, *5 (D. Ariz. 2016) (holding that the plaintiff's conclusory assertions were bare recitations of the legal elements of a claim and did not sufficiently state a claim for negligent supervision) (citations omitted).

Here, the Complaint merely recites boilerplate elements in his allegations which are insufficient to state a claim under 12(b)(6). For example, Plaintiff alleges that Fry's "knew or should have known that [Ezra] and other Fry's employees presented an unreasonable risk of discrimination to Fry's customers." See Compl., at ¶ 180. Moreover, Plaintiff alleges that Fry's "knew, or should have known" about Ezra and Michelle's "background" and "any past incidents of discrimination" but provides no additional information to support his speculative contentions. See id. at ¶¶ 131-32. Notably, Plaintiff's claim of negligent supervision is based on the same set of facts underlying his discrimination claims against the Individual Defendants, which, as demonstrated *supra*, are based on speculation and legal conclusions. Thus, the same fictitious harms Plaintiff alleges in support of his claim against the Individual Defendants cannot now be used to support his baseless claim that Fry's was negligent in supervising the Individual Defendants.

### IV.     CONCLUSION

For the reasons stated herein, the first cause of action requires dismissal for lack of subject-matter jurisdiction. Additionally, the Complaint fails to state a claim on all three causes of action. Thus, Defendants respectfully ask this Court to grant this Motion to

Dismiss the Complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6) and dismiss the Complaint in its entirety.

DATED: October 28, 2024         **ZELMS ERLICH LENKOV & MACK**

By:  *s/ Robert B. Zelms*
Robert B. Zelms
Courtney D. Casiano
Anastasia V. White
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Carl A Wescott**
8210 E Via De La Escuela
Scottsdale, AZ 85258
276-773-7377
carlwescottdubai@gmail.com
*Plaintiff*

*s/Julie Rawlings*

## **RULE 12.1(C) CERTIFICATION**

Pursuant to Rule 12.1(c) of the Local Rules of Civil Procedure, I hereby certify that before filing the foregoing motion, counsel for Defendants notified Plaintiff of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

*s/ Robert B. Zelms*